IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RODNEY McKENZIE, | |
| Plaintiff, | |
| v. | Civil Action No. 24-546-CFC |
| NAVY FEDERAL CREDIT UNION, | |
| Defendant. | |

Rodney McKenzie, Dover, Delaware. Pro se Plaintiff.

Joanne J. Cline, Emily L. Wheatley, Esquire, Troutman Pepper Hamilton Saunders LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

December 18, 2024
Wilmington, Delaware

_____
COLM F. CONNOLLY
CHIEF JUDGE

In February 2024, *pro se* Plaintiff Rodney McKenzie filed a complaint in the Kent County Court of Common Pleas against Defendant Navy Federal Credit Union (Navy Federal). (D.I. 1-1 at 9) On April 5, 2024, Navy Federal filed a motion for more definite statement. (D.I. 1-1 at 16–19) Without waiting for a ruling on that motion, Plaintiff filed a "more definite complaint" on April 29, 2024. (D.I. 1-1 at 11–12) On May 3, 2024, Navy Federal removed the case to this Court. (D.I. 1) On May 10, 2024, Navy Federal filed a motion to dismiss. (D.I. 4) On June 25, 2024, Plaintiff filed an Amended Complaint. (D.I. 8) On July 1, 2024, Plaintiff filed the operative Second Amended Complaint (the Complaint). (D.I. 11)

Navy Federal has moved pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) to dismiss the Complaint. (D.I. 12; D.I. 14 at 1)

I. **BACKGROUND**

Plaintiff's allegations, as best that the Court can discern them from the Complaint and Plaintiff's Final Supplement to Complaint in Opposition [to] Motion to Dismiss (D.I. 17), are assumed to be true for purposes of the pending motion. *See Umland v. PLANCO Fin. Servs.*, Inc., 542 F.3d 59, 64 (3d Cir. 2008).

In June 2020, Plaintiff obtained a secured auto loan from Navy Federal to buy a 2017 Acura MDX. D.I. 11 ¶ 1; D.I. 11-1 at 1. Almost four years later, Navy Federal told Plaintiff in a letter that the loan was in default; that Navy Federal had repossessed the Acura that served as collateral on the loan; that Navy Federal would sell the Acura on July 1, 2024; and that "to get the [Acura] back" before July 1, 2024 Plaintiff needed to pay the past due amount of $22,685.66 and repossession fees of $895. D.I. 11-1 at 1.

Plaintiff alleges that "[o]n September 20th, 2023, [he] just discovered that the alleged auto loan . . . ha[d] misrepresentations." D.I. 11 ¶ 1. According to Plaintiff, "there was a lack of disclosure [in the loan papers] and there may be fraud or accounting irregularities involved in this alleged debt as it relates to the Truth in Lending Act as per 15 USC [§§] 1601–1667(f)." D.I. 11 ¶ 1. Plaintiff characterizes his loan and the debt resulting from it as "alleged" based on his stated "belie[f] that he is the original creditor who initially provided [Navy Federal] with $37,736.98 of cash value via [a] promissory note." D.I. 11 ¶ 2. Plaintiff, however, bases that stated belief on his incorrect understanding (or at least his incorrect stated understanding) that a promissory note is a loan. In Plaintiff's words:

> Plaintiff believes that [Navy Federal] accepted the promissory note from him without compensating him for it. [Navy Federal] then knowingly and intentionally deposited the promissory note/negotiable instrument into an account and recorded the promissory note as an asset on the

2

> bank's books which created a matching liability on the bank's books that was owed to the plaintiff. . . . *[T]wo loans were exchanged. I lent the promissory note to the bank that funded the loan back to myself.*

D.I. 11 ¶ 3 (emphasis added). In Plaintiff's view, Navy Federal "committed fraud by taking the funds from the matching liability owed to the plaintiff [i.e., his promissory note] and returning it [to him] as a loan." D.I. 11 ¶ 3.

Plaintiff seems to believe that Navy Federal is a victim of its own fraud, as he says that, by virtue of the "exchange" of his loan for his promissory note, "the bank ha[s] been deprived of the use of these proprietary assets which were advertised as a 'loan' and thus the bank would be entitled to relief and restoration." D.I, 11 ¶ 3. Plaintiff also insists that "[i]f [his loan] is in fact a bona fide, legally correct debt obligation[,] it is [his] full intent and purpose to pay it in full[.]" D.I. 11 ¶ 1.

Plaintiff alleges claims under the Truth in Lending Act (TILA), the Fair Debt Collection Practices Act (FDCPA), and the Uniform Commercial Code (UCC), as well as a claim for fraud. D.I. 11 ¶ 5; D.I. 17 at 7–8. For relief, he seeks to collect $19,741.50 for funds paid into the alleged loan, back pay for missing days at work due to repossession of the Acura, and monetary compensation for violations of federal law. D.I. 11 ¶ 5.

3

In its motion to dismiss, Navy Federal argues that the Complaint is devoid of any factual allegations that would make any of the claims plausible under Rule 12(b)(6) and fails to satisfy the heightened pleading standard for fraud under Rule 9(b). D.I. 14.

## II.   LEGAL STANDARDS

### A.   Rule 12(b)(6)

In reviewing a motion to dismiss filed under Fed. R. Civ. P. 12(b)(6), the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to Plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Because Plaintiff proceeds pro se, his pleading is liberally construed and his Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.

A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). The Court is "not required

to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

"In evaluating a motion to dismiss," the Court "may consider documents that are attached to or submitted with the complaint ... matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted).

### B. Rule 9(b)

In actions for fraud, a complaint must satisfy Rule 9(b)'s heightened pleading standards. *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "Particularity" has been interpreted to require that plaintiffs "place the defendant on notice of the precise misconduct with which [it is] charged" by "alleg[ing] the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into a fraud allegation." *Alpizar-Fallas v. Favero,* 908 F.3d 910, 918–19 (3d Cir. 2018) (internal quotation marks and citation omitted); *see also United States ex rel. Bookwalter v. UPMC,* 946 F.3d 162, 176 (3d Cir. 2019) (requiring "the who, what, when, where, and how of the events at issue") (internal quotation marks and citations omitted).

### III. ANALYSIS

#### A. TILA Claims

Plaintiff has failed to plead a TILA violation. Plaintiff purports to list several TILA violations in the Complaint: "improper disclosure of amount financed," "finance charge," "pay schedule," "total number of payments," "annual percentage rate," and "security interest disclosures." D.I. 11 ¶ 5. Under the "Truth in Lending Act Violations" section of his Supplement, Plaintiff alleges that Navy

Federal "cannot prove that [it] loaned out [its] own liquid funds, thereby committing fraud and account irregularities in the disclosure section of the promissory note agreement," D.I. 17 at 7; and he also states in his Answering Brief that Navy Federal "created false loan documents and false disclosures that purported to follow the truth in lending act," D.I. 15 at 2.

Congress enacted TILA "because of the divergent, and often fraudulent, practices by which credit customers were apprised of the terms of the credit extended to them," and to "assure credit customers a meaningful disclosure of credit terms, thus enabling these consumers to compare more readily the various available credit terms and thereby to avoid the uninformed use of credit." *Johnson v. McCrackin–Sturman Ford, Inc.*, 527 F.2d 257, 262 (3d Cir. 1975); 15 U.S.C. § 1601(a). TILA generally requires a creditor in a consumer transaction to disclose, among other things, "(1) the identity of the creditor; (2) the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the sum of the amount financed and the finance charge, or total of payments; [and] (6) the number, amount, and due dates or period of payments scheduled." *Cappuccio v. Prime Cap. Funding LLC*, 649 F.3d 180, 188 (3d Cir. 2011) (internal quotation marks omitted). "TILA provides a private right of action, 15 U.S.C. § 1640(a), to all consumers who suffer damages as a result of a creditor's failure to comply with

TILA's provisions." *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 433 (3d Cir. 2018) (internal quotation marks and citation omitted).

"An action for an alleged violation of TILA must be brought within one year from the date that the alleged violation occurred." *Kamara v. Michael Funding, LLC*, 379 F. Supp. 2d 631, 633 (D. Del. 2005) (citing 15 U.S.C.A. § 1640(e)); *Bartholomew v. Northampton Nat. Bank of Easton, Easton, Pa.*, 584 F.2d 1288, 1296 (3d Cir. 1978)). Plaintiff filed this lawsuit in February 2024. The date of the alleged misrepresented automobile loan is June 29, 2020. As over three years have elapsed since the original loan, Plaintiff's TILA claims are time barred. *See Kamara*, 379 F. Supp. 2d at 633.

Even if not time barred, Plaintiff's TILA claim fails because Plaintiff has not plausibly alleged facts supporting a TILA violation. When a plaintiff "essentially repeats statutory language, invokes legal terms, and asserts somewhat disjointed and confusing allegations against [defendant], we are faced with conclusions and no facts." *Richardson v. PECO Energy*, 2022 WL 13918346, at *2 (E.D. Pa. Oct. 21, 2022) (internal quotation marks and citation omitted). Navy Federal's alleged failure to respond to Plaintiff's 2023 requests for affidavits showing that Plaintiff made a loan or to reveal its bookkeeping entries is irrelevant, as TILA concerns disclosure at the time of the original loan in 2020. Plaintiff's only allegation about a violation of TILA in 2020—"How can an alleged lender come up with numerical

8

figures in the annual percentage rate, finance charge, total payments, number of payments and amount of payments when the alleged lender never loaned its own funds," D.I. 17 at 6—is vague and conclusory, based on a misunderstanding about promissory notes, and does not allege that Navy Federal failed to disclose credit terms and details as required under the Act. While the Court must liberally interpret *pro se* litigants' pleadings, those pleadings "still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Accordingly, Plaintiff has failed to state a claim that Navy Federal violated TILA.

**B. FDCPA Claims**

Plaintiff has failed to plead that the FDCPA applies to Navy Federal. "The FDCPA does not apply to creditors who collect their own debts; it applies only to debt collectors who collect debts owed to another." *Frazier v. Morristown Mem. Hosp.*, 767 F. App'x 371, 375 (3d Cir. 2019); *see also Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 87–88 (2017) ("you have to attempt to collect debts owed *another* before you can ever qualify as a debt collector"). Plaintiff does not allege that Navy Federal sought to collect someone else's debt; on the contrary, Navy Federal sought to collect its *own* debt by repossessing Plaintiff's vehicle.

9

### C. UCC Claims

Plaintiff has not pleaded plausible allegations in support of his UCC claims. Plaintiff states in the Complaint "Subsection 3-302 Holder in due course" but fails to explain how that provision applies or how Navy Federal violated it. D.I. 11 ¶ 5. Plaintiff does not mention the UCC in his answering brief. *See generally* D.I. 15. He states in his Supplement that "[t]he defendant cannot be the holder in due course of the instrument or the epromissory note agreement because they coerced the plaintiff into doing business with them by making fraudulent claims of loans." D.I. 17 at 8. But Navy Federal is not claiming to be a holder in due course; Navy Federal claims that Plaintiff owes it money because Plaintiff took out a loan.

### D. Fraud Claim

Finally, the Complaint fails to plead a fraud claim. Rule 9(b) requires that a party state with "particularity" the circumstances constituting fraud, with "particularity" interpreted as the "date, time and place" of the alleged fraud or "some measure of substantiation." Fed. R. Civ. P. 9(b); *Alpizar-Fallas*, 908 F.3d at 919. A fraud claim also requires a plaintiff to allege "an intent to induce the plaintiff to act or to refrain from acting" and "the plaintiff's action or inaction taken in justifiable reliance upon the representation." *Benson v. Cooke*, 2016 WL 1562898, at *3 (D. Del. April 15, 2016). Plaintiff fails to satisfy any of these elements. None of his pleadings contain any facts about Navy Federal's intent to

10

induce Plaintiff to take out a loan or Plaintiff's justifiable reliance, or, for that matter, any facts about a "date, place, or time." The conclusory allegation that "Navy Federal Credit Union has committed fraud against the plaintiff by advertising that they made loans when this simply is not true," D.I. 15 at 1, is not enough to plead fraud.

## IV. CONCLUSION

For the reasons discussed above, the Court will grant Defendant Navy Federal's motion to dismiss.

The Court will enter an Order consistent with this Memorandum Opinion.